ON PETITION FOR REHEARING
WILLIAM PRYOR, Circuit Judge:
The main issue presented by this appeal is whether the Age Discrimination in Employment Act allows an unsuccessful job applicant to sue an employer for using a practice that has a disparate impact on older workers. Richard Villarreal sued R.J. Reynolds Tobacco Company and Pinstripe, Inc. for rejecting his job applications. All parties agree that Villarreal, as an applicant for employment, can sue for disparate treatment because the Act prohibits an employer from “fail[ing] or refus[ing] to hire .., any individual ... because of such individual’s age.” 29 U.S.C. § 623(a)(1). But Villarreal and the Equal Employment Opportunity Commission, as amicus curiae, argue that an applicant can also sue an employer for disparate impact because the Act prohibits an employer from “limit[ing], segregating], or classifying] his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual’s age.” Id. § 623(a)(2). We conclude that the whole text of the Act makes clear that an applicant for employment cannot sue an employer for disparate impact because the applicant has no “status as an employee.” Id. And we conclude that Villarreal is not entitled to equitable tolling of his claim of disparate treatment because he admitted facts that establish that he did not diligently pursue his rights. We affirm in part and remand for the panel to address the remaining issue about whether the continuing-violation doctrine makes Villarreal’s claim of disparate treatment timely.
I. BACKGROUND
On November 8, 2007, Villarreal applied for a position as a territory manager at R.J. Reynolds. He was 49 years old. Using guidelines provided, by R.J. Reynolds, a contractor screened out Villarreal’s application. The guidelines described the “targeted candidate” as someone “2-3 years out of college” who “adjusts easily to changes” and instructed the contractor to “stay away from” applicants “in sales for 8-10 years.” Neither the contractor nor R.J. Reynolds told Villarreal that he had been rejected, and Villarreal did not follow up.
Over two years later, in April 2010, lawyers contacted Villarreal and told him that R.J. Reynolds had discriminated against him on the basis of his age. In May 2010, Villarreal filed a charge with the Equal Employment Opportunity Commission. Villarreal also applied to R.J. Reynolds five more times in the next two years and was rejected every time. He amended his charge to include these rejections and to add Pinstripe, which replaced the first contractor, as a respondent.
In April 2012, the Commission issued notices of right to sue with respect to R.J. Reynolds and Pinstripe. Villarreal brought a collective action against R.J. Reynolds and Pinstripe under the Act on behalf of “all applicants for the Territory Manager position who applied for the position since the date RJ Reynolds began its pattern or practice of discriminating against applicants over the age of 40 ...; who were 40 years of age or older at the time of their application; and who were rejected for the *962 position.” The complaint alleged two counts: disparate treatment under section 4(a)(1) of the Act and disparate impact under section 4(a)(2) of the Act.
In anticipation of an objection of untimeliness, Villarreal also alleged facts to support equitable tolling of the limitations period that governed his complaint. He alleged that “he did not become aware until shortly before filing the charge that there was reason to believe that his 2007 application for the Territory Manager position had been rejected on account of his age.” He also alleged that “[t]he facts necessary to support [his] charge of discrimination were not apparent to him, and could not have been apparent to him, until less than a month before he filed his May 17, 2010 EEOC charge.”
R.J. Reynolds and Pinstripe moved to dismiss Villarreal’s complaint in part. They moved to dismiss the disparate-impact count on the ground that section 4(a)(2) does not give a cause of action to applicants, and they moved to dismiss as untimely the parts of both counts'based on the 2007 application. The district court dismissed the disparate-impact count and the untimely parts of both counts.
When Villarreal later moved for leave to amend the complaint, he alleged in his proposed amended complaint that he “was not an employee of ... R.J. Reynolds ... or related to anyone who was,” that he “did not receive any communication from RJ Reynolds or anyone else informing him why he was not hired,” that he “did not even know whether his application had been reviewed at all,” and that he was unaware of the screening guidelines. The district court denied leave to amend the complaint on the ground that amendment would be futile. It explained that Villarreal “has not alleged any misrepresentations or concealment that hindered [him] from learning of any alleged discrimination,” that he “made no attempt to contact [R.J. Reynolds] and ascertain the basis for his application rejection,” and that he “has not alleged any due diligence on his part.” Villarreal later moved to dismiss the remaining parts of the complaint, and the district court dismissed them with prejudice.
A divided panel of this' Court reversed. Villarreal v. R.J. Reynolds Tobacco Co., 806 F.3d 1288, 1290 (11th Cir. 2015), reh’g en banc granted, opinion vacated, No. 15-10602, 2016 WL 685800 (11th Cir. Feb. 10, 2016). It concluded that section 4(a)(2) was ambiguous and deferred to the interpretation of the Commission announced in a rule. Id. It also concluded that equitable tolling was appropriate. Id. The panel did not address the continuing-violation doctrine, which Villarreal also raised in support of the timeliness of his claims. Id. at 1306 n.16. Judge Vinson, sitting by designation, dissented. Id. at 1306.
II. STANDARDS OF REVIEW
“We review de novo the dismissal of a complaint for failure to state a claim, accepting all allegations in the complaint as true and construing facts in the light most favorable to the plaintiff.” Harry v. Marchant, 291 F.3d 767, 769 (11th Cir. 2002) (en banc). “We review the denial of a motion to amend for an abuse of discretion, but whether the motion is futile is a question of law that we review de novo.” Brooks v. Warden, 800 F.3d 1295, 1300 (11th Cir. 2015).
III. DISCUSSION
We divide our discussion in two parts. First, we explain that Villarreal failed to state a claim under section 4(a)(2) because he was a job applicant, not an employee of R.J. Reynolds. Second, we explain that Villarreal is not entitled to equitable toll- *963 mg because he admits facts that disprove diligence.

A. Villarreal Failed to State a Claim Under Section 4(a)(2).

Section 4(a)(2) of the Act makes it “unlawful for an employer ... to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual’s age.” 29 U.S.C. § 623(a)(2). We consider not only the text of section 4(a)(2) itself, but also the statutory context in sections 4(c)(2) and 4(a)(1). See Antonin Scalia & Bryan A. Garner, Reading Law 167 (2012) (“The text must be construed as a whole.”); id. at 170 (“A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.”); Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (“The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.”); Morrison-Knudsen Constr. Co. v. Dir., Office of Workers’ Comp. Programs, U.S. Dep’t of Labor, 461 U.S. 624, 633, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983) (“[W]e have often stated that a word is presumed to have the same meaning in all subsections of the same statute.”). If the text of the statute is clear, “that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
We conclude that Villarreal failed to state a claim of disparate impact. The plain text of section 4(a)(2) covers discrimination against employees. It does not cover applicants for employment.
The key phrase in section 4(a)(2) is “dr otherwise adversely affect his status as an employee.” 29 U.S.C. § 623(a)(2). By using “or otherwise” to join the verbs in this section, Congress made “depriving] or tending] to deprive any individual of employment opportunities” a subset of “adversely affect[ing] [the individual’s] status as an employee.” Id. In other words, section 4(a)(2) protects an individual only if he has a “status as an employee.” Id.
This use of “or otherwise” to connect verbs is a familiar construction. For example, Congress allows the use of funds to extradite a United States citizen “to a foreign country that is under an obligation to surrender persons to the International Criminal Court” if there are “satisfactory assurances to the United States that the country will not extradite or otherwise transfer that citizen to the International Criminal Court.” 22 U.S.C. § 7402(a). As wé understand that “extradite” is a subset of “transfer” in this statute, we also understand that “deprive or tend to deprive any individual of employment opportunities” is a subset of “adversely affect his status as an employee” in section 4(a)(2). Other examples abound. See, e.g., 18 U.S.C. § 2345(b) (“inhibit or otherwise affect”); 25 U.S.C. § 1728(c) (“considered as income or resources or otherwise utilized”); 33 U.S.C. § 1518(a)(3) (“call at or otherwise utilize a deepwater port”). Even our own procedural rules use this construction. For example, a single judge of our Court “may not dismiss or otherwise determine an appeal or other proceeding.” Fed. R. App. P. 27(c); see also 11th Cir. R. 27-l(d) (same); 11th Cir. R. 41-l(a) (“shows that a substantial question is to be presented to the Supreme Court or otherwise sets forth good cause for a stay”); 11th Cir. R. 42-l(b) (“fails to file a brief or other required papers within *964 the time permitted, or otherwise fails to comply with the applicable rules” and “file documents out of time or otherwise remedy the default”). In each of these examples, the first action is a subset of the second action. So too is “deprive or tend to deprive” a subset of “adversely affect” in section 4(a)(2).
Villarreal cites a contrary interpretation of the phrase “or otherwise” in Bine v. Imagitas, Inc., 590 F.3d 1215 (11th Cir. 2009), but we reject the reasoning in that opinion. The statute at issue in Bine, made it unlawful to “knowingly disclose or otherwise make available” certain personal information. 18 U.S.C. § 2721(a). The panel wrote that the use of the disjunctive “or” “indicates alternatives and requires that those alternatives be. treated separately.” Bine, 590 F.3d at 1224 (quoting Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th Cir. 1997)). The panel also wrote that “Congress’s use of ‘otherwise’ confirms that ‘make available’ means something different than, or unlike, disclosure.” Id. But the panel—and the authorities it cited—discussed “or” and “otherwise” in isolation. Words can acquire different meanings when combined in a phrase, and the phrase “or otherwise” is different from the sum of its parts.
In her dissent, Judge Martin contends that our reading of the phrase “or otherwise adversely affect his status as an employee” renders superfluous the phrase “deprive or tend to deprive any individual of employment opportunities,” Dissenting Op. of Martin, J., at 983, but the surplus-age canon does not apply in this context. The phrase “or otherwise” operates as a catchall: the specific items that precede it are meant to be subsumed by what comes after the “or otherwise.” See Begay v. United States, 553 U.S. 137, 153, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (Scalia, J., concurring in the judgment) (“[T]he canon against surplusage has substantially less force when it comes to interpreting a broad residual clause....”). This construction allows the drafter to “add specificity about known dangers” while ensuring that “other [dangers], not readily imagined, [are] also encompassed.” United States v. Persichilli, 608 F.3d 34, 40 (1st Cir. 2010). In any event, the surplusage canon applies “only where a competing interpretation gives effect ‘to every clause and word of a statute.’ ” Microsoft Corp. v. i4i Ltd. P’ship, 564 U.S. 91, 106, 131 S.Ct. 2238, 180 L.Ed.2d 131 (2011) (quoting Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L,Ed.2d 251 (2001)). Judge Martin’s interpretation, which treats “or otherwise adversely affect his status as an employee” and “deprive or tend to deprive any individual of employment opportunities” as separate categories, does not give effect to every word because it reads “otherwise” out of the statute.
By making “deprive or tend to deprive any individual of employment opportunities” a subset of “adversely affect[ing] his status as an employee,” Congress limited section 4(a)(2) to discrimination against employees. Applicants who are not employees when alleged discrimination occurs do not have a “status as an employee.” Dictionaries confirm that the phrase “status as an employee” connotes a present fact. The Oxford English Dictionary primarily defines “status” in the legal context to mean “[t]hefact or position of belonging to a group which is subject to certain legal rights or limitations,” and it provides usage notes ranging from 1767 to 2002. Status, Oxford English Dictionary (online ed.) (emphasis added) (all Internet materials as visited June 30, 2016, and available in Clerk of Court’s ease file). Other dictionaries have similar definitions. See Status, A Dictionary of Modem Legal Usage 828 (Bryan A. Garner ed., 2d ed. 1995) (“belonging to a particular class of persons to *965 all of whom the law assigns particular legal powers, capacities, liabilities or incapacities” (emphasis added) (quoting 1- David M. Walker, Principies of Scottish Private Law 198 (3d ed. 1982))); Status, Black’s Law Dictionary 1264 (Special Deluxe 5th ed. 1979) (“[sjtanding; state or condition-, social position” (emphasis added)); Status, Webster’s Neio International Dictionary 2463 (2d ed. 1961) (defining “status” in the legal context as “[tjhe condition of a person by which the nature of his legal personality and his legal capacities are determined, and therefore the nature of the legal relations to the' state or to other persons into which he may enter” (emphasis added)). The meaning of “as” also confirms that “his status as an employee” refers to a present fact. The Oxford English Dictionary defines “as” in the relevant sense, to mean “[ijn the character, capacity,. or function of.” As, Oxford English Dictionary (online ed,).
Judge Martin’s dissent stresses the breadth of the words “any individual,” see Dissenting. Op. of Martin, J., at 982-83, .984, but. the dissent reads those words in isolation. “[Ejven though the word ‘an/ demands a broad interpretation, we must look beyond that word itself’ to determine its ultimate scope. Small v. United States, 544 U.S. 385, 388, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005); see also United States v. Alvarez-Sanchez, 511 U.S. 350, 357, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) (“[Respondent errs in placing dispositive weight on the broad statutory reference to ‘an/ law enforcement officer or agency without considering the rest of the statute.”); United States v. Palmer, 16 U.S. 3 Wheat. 610, 631, 4 L.Ed. 471 (1818) (Marshall, C.J.) (“The words ‘any person or persons,’ are broad enough to comprehend every human being. But general words must ... be limited ... to those objects to which the legislature intended to apply them.”)^ The words “any individual” in section 4(a)(2) are limited by the phrase “or otherwise affect his status as an employee,” so the “individuals” that the, statute covers are those with a “status as anemployee.” Judge Martin’s dissent says “ ‘any individual’ means ‘any individual,’” Dissenting Op. of Martin, J., at 984, but the whole text makes clear that-“any individual” with a. “status as an employee” means “any employee.”
- Judge Martin’s dissent also contends that someone can have a “status as an employee” without being an employee, see id. at 983-84, but we disagree. Judge Martin’s dissent cites the Dictionary Act for the proposition that “words used in the present tense include the future as well as the present,” id. at 983 (quoting 1 U.S.C. § 1), but the word “status” is a noun, not a verb. Nouns do not have “tense.” See Bryan A. Garner, Tense, The Chicago Guide to Grammar, Usage, and Punctuation 480 (2016) (“A verb quality that expresses the time of action—past, present, or future.” (emphasis added)); Bryan A. Garner, Tense, Gamer’s Modem American Usage 920 (3d ed. 2009) (“A verb’s quality that shows the time in which an act, state, or condition occurs or occurred; the correspondence between a verb form and the concept of time.” (emphases added)); Carr v. United States, 560 U.S. 438, 448, 130 S.Ct. 2229, 176 L.Ed.2d 1152 (2010) (explaining that section 1 of the Dictionary Act “ascribes significance to verb tense” (emphasis added)). We know that “status” connotes a present fact in section 4(a)(2) based on the plain meaning of the phrase “his status as an employee,” not based on any “tense.”
Judge Martin’s dissent also cites judicial opinions that use the word “status” after an adjectival noun—“priority status,” “seaman status,” “objector status,” etc.—to prove that status does not always connote a present fact. See Dissenting Op. of Mar *966 tin, J., at 983 n.2. But even if we were to assume that snippets from judicial opinions can shed meaningful light on the meaning of a statute, of. United States v. Muckleshoot Indian Tribe, 235 F.3d 429, 433 (9th Cir. 2000) (“Opinions, unlike statutes, are not usually written with the knowledge or expectation that each and every word may be the subject of searching analysis.”), the examples provided by Judge Martin’s dissent do not track the language of section 4(a)(2). The dissent might have a point if section 4(a)(2) applied to anyone who was “denied employee status”; but the statute instead applies to anyone who had “his status as an employee” adversely affected. The only examples in Judge Martin’s dissent that come close to the actual language in the statute do not state that someone who applies for a status has that status during the application process. For example, the dissent., cites Santos v. Immigration & Naturalization Service, 375 F.2d 262 (9th Cir. 1967), because that decision states that an alien can be “ ‘denied status as a permanent resident.’ ” Dissenting Op. of Martin, J., at 983 (quoting Santos, at 264 n.l). But Santos states that an alien can attain status as a permanent resident only after undergoing an application process, not that he had that status during the application process. See Santos, 375 F.2d at 263 (noting an alien can apply for “adjustment of status from non-immigrant to permanent resident”).
Statutory context confirms our reading of section 4(a)(2). Section 4(c)(2) applies to applicants as well as employees only because it adds the words “or as an applicant for employment” to a provision that is otherwise largely parallel to section 4(a)(2):
It shall be unlawful for a labor organization ...
to limit, segregate, or classify its membership, or to classify or fail , or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual’s age.
29 U.S.C. § 623(c) (emphasis added). Because “[i]f possible, every word and every provision is to be given effect” and “[n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence,” Sca-lia & Garner, supra, at 174, we know that the term “employee” does not encompass “applicant for employment” in section 4(c)(2). And because “[a] word or phrase is presumed to bear the same' meaning throughout a text” and “a material variation in terms suggests a variation in meaning,” id. at 170, the term “employee” and the phrase “deprive or tend to deprive any individual ... or otherwise adversely affect his status as an employee” in section 4(a)(2) do not encompass an applicant for employment.
In her dissent, Judge Martin responds that section 4(c)(2) mentions applicants because it, unlike section 4(a)(2), covers failures to “refer” someone for employment, Dissenting Op. of Martin, J., at 984-86, but this argument does not line up with Judge Martin’s interpretation of section 4(a)(2). If “any individual” always includes applicants, see id. at 984, and applicants can have their “status as an employee” adversely affected, see id. at 982-84, then Congress had no need to mention applicants in section 4(c)(2). The statute would mean the exact same thing, under Judge Martin’s interpretation, if the words “or as an applicant for employment” were deleted. But that interpretation violates the *967 surplusage canon. See Scalia .& Garner, supra, at 174.
We also contrast the text of section 4(a)(2) with the text of section 4(a)(1), which does cover applicants. Section 4(a)(1) makes it unlawful for employers “to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age.” 29 U.S.C. § 623(a)(1) (emphasis added). Unlike section 4(a)(1), section 4(a)(2) does not mention an employer refusing to hire someone. And unlike section 4(a)(2), section 4(a)(1)' says nothing about a “status as an employee.”
According to Judge Martin’s dissent, a plurality of the Supreme Court has described “the ‘key textual differences’ between” sections 4(a)(1) and 4(a)(2) and, in so doing, said nothing about claims of disparate impact in hiring, Dissenting Op. of Martin, J., at 987-88 (quoting Smith v. City of Jackson, 544 U.S. 228, 236 n.6, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (plurality op.)), but the plurality did not say that these “key textual differences” were the only differences between these two sections. See Smith, 544 U.S. at 236 n.6, 125 S.Ct. 1536 (plurality op.) (“Justice O’Con-nor ignores key textual differences between § 4(a)(1) ... and § 4(a)(2).”). Indeed, in the very same paragraph, the plurality described section 4(a)(2) as a provision that covers employees. See id. (“[A]n employer who classifies his employees without respect to age may still be liable under the terms of [section 4(a)(2) ] if such classification adversely affects the employT ee because of that employee’s age....” (emphases added)).
Villarreal argues, based on a different section of the Act, that “employee” in section 4(a)(2) means something other than employee, but his argument fails. Section 7(c)(1) creates a cause of action for “[a]ny person aggrieved” and provides that the right of action “shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.” Id. § 626(c)(1) (emphasis added). Villarreal asserts that by equating “person” and “employee” in section 7(c)(1), Congress expanded “employee” to mean “any individual” in section 4(a)(2). But the statute defines “employee” as “an individual employed by any employer,” id. § 630(f), which is also the common meaning of “employee.” “It is very rare .that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is virtually conclusive.” Scalia & Garner, supra, at 228. Section 7(c)(1) does not create ambiguity about the meaning of “employee” in section 4(a)(2).
Villarreal’s other arguments that “employee” does not mean employee are even easier to reject. Villarreal cites Robinson v. Shell Oil Co., which held that a prohibition on retaliation against employees in Title VII extended to former employees because of statutory context. See 519 U.S. at 345-46, 117 S.Ct. 843. But the Supreme Court did not interpret employee to mean job applicant in Robinson, and the statutory context in this appeal—specifically, sections 4(c)(2) and 4(a)(1)—suggests that they are different. Judge Martin’s dissenting opinion adds that the definition of “employment agency” in Title VII uses “employees” to mean “prospective employees,” Dissenting Op. of Martin, J., at 983-84 (quoting Robinson, 519 U.S. at 343 n.3, 117 S.Ct. 843), but the language of that provision is nothing like the language in section 4(a)(2), see 42 U.S.C. § 2000e(c) (defining “employment agency” as “any person regularly undertaking with or without compensation to procure employees *968 for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person”). Villarreal also cites section 201 of the Genetic Information Nondiscrimination Act of 2008, id. § 2000ff(2)(A)(i), which defines “employee” to include “applicant.” But the applicable definition in the Age Discrimination in Employment Act does not include “applicant.” See 29 U.S.C. § 630(f).
Villarreal tries to circumvent the plain meaning of the statute by citing decisions of the Supreme Court that interpret similar language in other statutes, but those decisions do not support his argument. Villarreal argues that, in Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc., — U.S. -, 135 S.Ct. 2507, 192 L.Ed.2d 514 (2015), the Supreme Court interpreted “otherwise make unavailable” in the Fair Housing Act and compared it to the phrase “otherwise adversely affect” in the Age Discrimination in Employment Act. Id. at 2519. The Supreme Court described both phrases as “catchall.” Id. The use of the word “catchall” by the Supreme Court is agnostic about the present matter because the Court used the word to explain why the Housing Act creates a cause of action for disparate impact. Id. The Supreme Court has already held that section 4(a)(2) of the Age Discrimination in Employment Act allows employees to allege disparate impact, see Smith, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410, and the Court shed no light in Inclusive Communities Project on whether a job applicant may sue under section 4(a)(2).
Villarreal and Judge Martin’s dissent argue that, in Griggs v. Duke Power Co., 401 U.S, 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court interpreted then-identical language in Title VII to encompass applicants, see Dissenting Op, of Martin, J., at 986-87, but Griggs does not support their'argument. The plaintiffs in Griggs were employees, see Griggs, 401 U.S. at 426, 91 S.Ct. 849 (“All the petitioners are employed at the Company[ ] — ”), and the opinion, nowhere states that a non-employee applying for a job would be covered by the language in Title VII. The only “condition of employment” that the Supreme Court considered in Griggs was “a condition of employment in or transfer to jobs”—that is, a -condition that employees graduate high school or pass a test before they could be promoted or transferred to a new position. Griggs, 401 U.S. at 425-26 (emphasis added). Lest there be any doubt, on remand the district court entered an injunction in favor of present and future employees, not applicants “who may hereafter seek employment.” See Griggs v. Duke Power Co., No. C-210-G-66, 1972 WL 215, at *1 (M.D.N.C. Sept. 25, 1972) (defining “[t]he class of persons entitled to relief under this Order” as “[a]ll black persons employed” or “who may subsequently be employed”).
Villarreal and Judge Martin’s dissent contend that the Supreme Court has since described Griggs as a case about applicants, but they are incorrect. Villarreal quotes language about applicants and Griggs from Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), but because the Supreme Court decided Dothard after Congress added language about applicants to Title VII, see 42 U.S.C. § 2000e-2(a)(2) '(“employees or applicants for employment”), we do not consider this dicta significant. Judge Martin’s dissent quotes language about “hiring criteria” and Griggs from Inclusive Communities Project. Dissenting Op. of Martin, J., at 981, 987 (quoting Inclusive Cmtys. Project, 135 S.Ct. at 2517). But the Supreme Court was discussing how the “rule” announced in Griggs—that “employment practices” are permissible if they have a “ ‘manifest relationship’ to job per *969 formance”—would apply, “for example,” “in a disparate-impact case” brought by an applicant under Title VII as it is written today. Inclusive Cmtys. Project, 135 S.Ct. at 2517 (quoting Griggs, 401 U.S. at 432, 91 S.Ct, 849). The Supreme Court did not say that Griggs—a case that was clearly about promotion and transfer policies— involved “hiring criteria” for first-time applicants. See also Connecticut v. Teal, 457 U.S. 440, 446, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982) (describing Griggs as a case about “employees”); Albemarle Paper Co. v. Moody, 422 U.S. 405, 426, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (describing Griggs as a case about “transferees”); Wards Gove Packing Co. v. Atonio, 490 U.S. 642, 664, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ., dissenting) (describing Griggs as a case “in which a class of utility company employees challenged the conditioning of entry into higher paying jobs upon a high school education or passage of two written tests” (emphasis added)). Indeed, nine current or former Justices have written or joined opinions describing section 4(a)(2) as protecting employees, not applicants. See Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 96 n.13, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008) (explaining that the statute prohibits acts that “deprive or tend to deprive ... or otherwise adversely affect [employees] ... because of ... age” (alterations in original) (quoting 29 U.S.C. § 623(a)(2)); Smith, 544 U.S. at 236, 125 S.Ct. 1536 (plurality opinion) (“[T]he text focuses on thp effects of the action on the employee rather than the motivation for the action of the employer.”); id. at 266, 125 S.Ct. 1536 (O’Connor, J., joined by Kennedy and Thomas, JJ., concurring in the judgment) (“Section 4(a)(2), of course, does not apply to ‘applicants for employment’ at all—it is only § 4(a)(1) that protects this group.”). .
Villarreal and the Commission next argue about the meaning of the parallel provision in Title VII based on legislative history, but we do not consider legislative history when the text is clear. “[I]n interpreting a statute a court should always turn first to one, cardinal canon before others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what, it says there.” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). “When the words of a statute are unambiguous, then, this first canon is also the last: ‘judicial -inquiry is complete.’ ” Id: at 254, 112 S.Ct. 1146 (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)); accord Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc). “Even if a statute’s legislative history evinces an intent contrary to its straightforward statutory command, ‘we do not resort to legislative history to doud a statutory text that is clear.’” Harry, 291 F.3d at 772 (quoting Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). To the extent we previously have ruled or suggested differently, we now disavow it. Because the text, is clear, “[w]e will, as we must, ‘presume that Congress said what it meant and meant what it said.’” Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1316 (11th Cir. 2015) (quoting United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc)).
Villarreal and the Commission also contend that the purpose of the- Act requires us to ignore the plain text, but “[o]ur job is to follow the text even if doing so will supposedly ‘undercut a basic objective of the statute,’ ” Baker Botts L.L.P. v. ASARCO LLC, — U.S. -, 135 S.Ct. 2158, 2169, 192 L.Ed.2d 208 (2015) (quot *970 ing Baker Batts, 135 S.Ct. at 2170 (Breyer, J., dissenting)). Elevating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written. See Pavelic & LeFlore v. Marvel Entm’t Grp., 493 U.S. 120, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (“Our task is to apply the text, not to improve upon it.”); Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) (‘We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead, we must give effect to the text Congress enacted_”); Noble State Bank v. Haskell, 219 U.S. 575, 580, 31 S.Ct. 299, 55 L.Ed. 341 (1911) (“We fully understand the practical importance of the question, and the very powerful argument that can be made against the wisdom of the legislation, but on that point we have nothing to say, as it is not our concern.”). It also disregards “the processes of [legislative] compromise and, in the end, prevents the ef-fectuation of congressional intent.” Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 374, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986). “Congress may be unanimous in its intent to stamp out some vague social or economic evil,” but “because its Members may differ sharply on the means for effectuating that intent, the final language of the legislation may reflect hard-fought compromises.” Id.
Finally, Villarreal and the Commission urge us to defer to the Commission’s interpretation of the statute, but we do not defer to an agency’s interpretation of a statute when the text is clear. “Statutory language is ambiguous if it is susceptible to more than one reasonable interpretation,” Med. Transp. Mgmt. Corp. v. Comm’r of IRS, 506 F.3d 1364, 1368 (11th Cir. 2007), and a forced meaning does not create ambiguity. Because “[t]he judiciary is the final authority on issues of statutory construction,” we must first “employ[] [the] traditional tools of statutory construction” to determine whether the meaning of the statute is clear. Chevron, 467 U.S. at 843 n.9, 104 S.Ct. 2778. Although employing the traditional tools of statutory construction may require some effort, that effort does not make a text ambiguous. See Wagner Seed Co. v. Bush, 946 F.2d 918, 924 (D.C. Cir. 1991). We have employed the traditional tools of statutory interpretation here, and we conclude that the only reasonable meaning of the statute is that a job applicant cannot sue under section 4(a)(2).
Congress did not leave applicants without recourse. Section 4(a)(1) provides them with a cause of action for disparate treatment. See 29 U.S.C. § 623(a)(1). To prove this cause of action using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), statistics about an employer’s practice “may be relevant to any showing of pretext.” Id. at 804-05, 93 S.Ct. 1817. If an applicant fore-goes the burden-shifting framework and instead “presents circumstantial evidence [to] create[ ] a triable issue concerning the employer’s discriminatory intent,” Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011), general evidence of a discriminatory practice also may be relevant in proving his case. But Villarreal voluntarily dismissed his timely claims of disparate treatment. As to his claim of disparate impact, we conclude that he failed to state a claim under section 4(a)(2) because the text protects employees, not applicants.

B. Villarreal Admits Facts That Foreclose Equitable Tolling.

Villarreal argues that he alleged facts that would entitle him to equitable tolling of his remaining claim of *971 disparate treatment. The party seeking equitable tolling has the burden of proof, Menominee Indian Tribe of Wis. v. United States, — U.S. -, 186 S.Ct. 750, 755-56, 198 L.Ed.2d 652 (2016), although he need not make any allegations about equitable tolling in his complaint, see La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of ‘which are required for equitable tolling, see Menominee Indian Tribe, 136 S.Ct. at 755-56. Villarreal did só here by alleging facts that prevent him from proving diligence.
The general test for equitable tolling requires the party seeking tolling to prove “(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.” Id. at 755 (quoting Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)). Although the Supreme Court has stopped short of holding that this test applies in all contexts, see id. at 756 n.2, we have applied it in a variety of contexts, see, e.g., Bhd. of Locomotive Eng’rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1197, 1200 (11th Cir. 2008) (Railway Labor Act); Cabello v. Fernandez-Larios, 402 F.3d 1148, 1154-55 (11th Cir. 2005) (Torture Victim Protection Act); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (Antiterrorism and Effective Death Penalty Act); see also Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007) (requiring extraordinary circumstances in an action under the Social Security Act); Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993) (requiring due diligence in an action under the Public Vessels Act and the Suits in Admiralty Act). R.J. Reynolds argues that this general test applies, but Villarreal argues for a special test.
We hold that the general test applies. We reject a special test because the “[p]ro-cedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.” Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). “[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.” Id. (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). In the antidiscrimination context, “[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination.” Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (alteration in original) (quoting Mohasco Corp., 447 U.S. at 825, 100 S.Ct. 2486). “[T]he costs associated with processing and defending stale or dormant claims outweigh the federal interest in guaranteeing a remedy to every victim of discrimination.” Mohasco Corp., 447 U.S. at 820, 100 S.Ct. 2486. For these reasons, “[f]ederal courts have typically extended equitable relief only sparingly,” Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), and requiring proof of diligence and extraordinary circumstances serves these goals.
We also observe that other circuits have applied this general test or a materially similar one in discrimination cases. See Dyson v. Dist. of Columbia, 710 F.3d 415, 421 (D.C. Cir. 2013); Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003); Lee v. Cook Cty., 635 F.3d *972 969, 972 (7th Cir. 2011). The Sixth Circuit considers diligence, the reasonableness of ignorance, lack of notice, lack of constructive knowledge, and prejudice to the defendant. See Amini v. Oberlin Coll, 259 F.3d 493, 500 (6th Cir. 2001). The Eighth Circuit denies equitable tolling when the plaintiffs neglect is inexcusable. See Anderson v. Unisys Corp., 47 F.3d 302, 306-07 (8th Cir. 1995). The Ninth Circuit considers diligence and limits equitable tolling to “extreme cases.” See Scholar v. Pac. Bell, 963 F.2d 264, 267-68 (9th Cir. 1992). And the Tenth Circuit requires “active deception” by the defendant and diligence by the plaintiff. See Montoya v. Chao, 296 F.3d 952, 957-58 (10th Cir. 2002) (quoting Cottrell v. Newspaper Agency Corp., 590 F.2d 836, 838-39 (10th Cir. 1979)).
Villarreal cites Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975), but that decision involved active deception by the employer. We explained in Reeb that the employer “actively sought to mislead Mrs. Reeb in informing her that adequate funds for her program would no longer be available.” Id. at 930. We held that “[i]n these circumstances we apply the familiar equitable modification to statutes of limitation: the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.” Id. Here, Villarreal did not allege or attempt to allege that R.J. Reynolds actively misled him. As a result, the general test applies: a plaintiff seeking equitable tolling must prove diligence and extraordinary circumstances.
Villarreal is not entitled to equitable tolling because he admitted facts that foreclose a finding of diligence. Specifically, he alleged that he did nothing for more than two years between his initial application and the communication from the lawyer. Villarreal argues that any inquiry would have been futile, but even assuming that futility is an exception to the diligence requirement, it would not apply when a plaintiff does nothing to investigate the status of his application, as opposed to.the reasons for his rejection. We have no difficulty concluding, as a matter of law, that a plaintiff who does nothing for two years is not diligent. Cf. Amini, 259 F.3d at 501 (concluding that a plaintiff was not diligent despite “ ‘regular’ computer visits to [the employer’s] website, as well as a physical visit to the campus ... in which [he] searched the [employer’s] announcement boards for information on the new hire” (citation omitted)).
In his partial dissent, Judge Jordan argues that we should not decide whether Villarreal is entitled to equitable tolling because Villarreal’s complaint and proposed amended complaint are silent as to how Villarreal learned that R.J. Reynolds rejected his application and whether Villarreal acted diligently. This silence, according to Judge Jordan, is “not an affirmative allegation” but an “omission” that prohibits dismissal of Villarreal’s complaint. Op. of Jordan, J., at 974-75. We disagree.
Judge Jordan’s assertion runs counter to the record and ignores Villarreal’s argument. In his proposed amended complaint, Villarreal explained that he learned about the rejection of his application from an attorney in 2010, not by his own diligence. See PL’s Proposed Am. Compl. ¶ 28 (Until 2010 “[Villarreal] did not even know whether his application had been reviewed at all, much less whether it had been rejected or screened out.”). As a result, the district court denied Villarreal’s motion to file an amended complaint in part because Villarreal had failed to allege “any due diligence on his part to determine the sta *973 tus of his 2007 application.” Villarreal has never contested that he did nothing to ascertain the status of his application until 2010. He neither contested his lack of diligence before the district court, nor has he contested it on appeal. Villarreal instead has argued that he was not required to inquire about the status of his application and exercise any due diligence. But when Villarreal chose to anticipate the affirmative defense of equitable tolling in his complaint, he bore the burden of alleging facts to support that defense. And this burden required him to allege that he was diligent, see Menominee Indian Tribe, 136 S.Ct. at 755-56, which he did not do.
We conclude that equitable tolling does not apply to the claim of disparate treatment, and we affirm in part the dismissal of that claim and the denial of leave to aménd the complaint. Villarreal also, argued before the panel that the continuing-violation doctrine makes the claim timely, but the panel did not address this argument. We exercise our discretion to remand this argument to the panel, and we express no view on the issue.
IV. CONCLUSION
We AFFIRM the dismissal of the claim of disparate impact, and we AFFIRM IN PART the dismissal of the claim of disparate treatment and the denial of leave to amend the complaint. We REMAND to the panel to address the continuing-violation doctrine in the first instance.