[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-11928

Non-Argument Calendar

————————————————

TANYA SMITH,

Plaintiff-Appellant,

*versus*

INTERNATIONAL BUSINESS MACHINES CORP.,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-03856-JPB

————————————————

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Tanya Smith appeals the district court's order confirming an arbitration award in favor of her former employer, International Business Machines Corp. ("IBM"), on her claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. The arbitrator concluded that Smith's arbitration demand was sent one day too late under the plain terms of the parties' arbitration agreement, and it rejected Smith's attempts to excuse or look past the late submission. The district court denied Smith's petition to vacate the award and granted IBM's motion to confirm it. Smith now appeals. After careful review, we affirm.

## I.

After more than thirty years of employment at IBM, Smith was terminated through a reduction in force in 2020, at the age of 54. In connection with her termination, Smith signed a separation agreement, under which she received certain benefits in exchange for agreeing to arbitrate individually any claims of age discrimination under the ADEA, among other things.

The separation agreement contained a provision specifying the time limits and procedure for initiating arbitration. According to this timing provision,

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration

> Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.

The agreement contemplated that, once Smith submitted a written demand to IBM, the company would then file with the designated arbitrator, JAMS.

Because ADEA claims are "one[s] which must first be brought before a government agency," *see* 29 U.S.C. § 626(d)(1), Smith was required to initiate arbitration within the deadline for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). As relevant here, that deadline was 180 days from when the "alleged unlawful practice occurred." *Id.* § 626(d)(1)(A).

On November 17, 2020, Smith filed an arbitration demand directly with JAMS, raising an ADEA claim against IBM. That date was 180 days from the date Smith received notice of her termination, May 21, 2020. *See Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987) ("A final decision to terminate the

employee, rather than actual termination, constitutes the 'alleged unlawful practice' that triggers the filing period."). But Smith did not mail a written demand for arbitration to IBM until the next day, November 18, 2020, at the earliest.[1] As a result, IBM moved to dismiss the arbitration, claiming her demand was one day too late.

The arbitrator granted IBM's motion. The arbitrator found that the timing provision required Smith to submit a written arbitration demand to IBM by the deadline of November 17, but that she failed to do so.[2] The JAMS filing did not count, the arbitrator explained, because the arbitration agreement plainly required the written demand to be sent *to IBM*.

The arbitrator was not persuaded by Smith's arguments that the one-day delay in submitting the demand to IBM was a *de minimis* violation of the agreement or otherwise excused under the circumstances. Dismissing Smith's reliance on "various exceptions to late filings in court," the arbitrator stated that he was "obligated to apply the terms of the contract between the parties as written,"

---

[1] The shipping label for the written demand was created on November 18, 2020, but it appears the item was received by the Postal Service two days later.

[2] It does not appear Smith contested this deadline before the arbitrator or directly argued for a later accrual date for her ADEA claim, and she does not properly raise this as an issue on appeal, despite some passing references. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

which made clear an untimely claim is "deemed waived," and that her "failure to abide by its terms is fatal to her claim." As for the alleged pandemic-related hurdles, the arbitrator found that "the fact that she managed to timely file a demand with JAMS demonstrates that pandemic restrictions were not the problem."

The arbitrator also rejected Smith's reliance on the "piggybacking" doctrine, which is a "judge made exception to the administrative exhaustion requirement." The arbitrator noted that Smith had not cited any authority applying piggybacking in the context of arbitration. More importantly, according to the arbitrator, applying piggybacking would abrogate contract terms providing that the filing of an EEOC charge did not extend the time for making a demand for arbitration. The arbitrator also found that the limitation period in the timing provision, as compared to the ordinary ADEA limitation period, "was not shortened," as Smith had contended, "but matched."

Smith filed a motion for reconsideration, and IBM responded in opposition. The arbitrator initially denied the motion as outside his authority, but later, after the JAMS legal department concluded that the arbitration agreement permitted such a motion, he entered an amended order denying the motion. The arbitrator wrote that Smith's motion was not the place to raise "new issues that could have been raised before" and that it was largely an attempt to relitigate issues already decided against her. The arbitrator denied the motion for the reasons set forth in its order granting

the motion to dismiss and in IBM's brief in opposition to the motion.

Smith petitioned the district court to vacate the arbitration award. *See* 9 U.S.C. § 10. Her amended petition also sought, in the alternative, a declaratory judgment that the timing provision is "unenforceable and void." *See* 28 U.S.C. § 2201. IBM, for its part, moved to confirm the award. The district court denied Smith's requests for relief, granted IBM's motion, and confirmed the award. Smith now appeals.

## II.

"We review confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's findings of fact for clear error and its legal conclusions *de novo*." *Frazier v. CitiFinancial Corp. LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010).

## III.

Arbitration is a "matter of contract" under the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 1–16, and "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quotation marks omitted). Those terms may include the "rules under which th[e] arbitration will be conducted." *Id.* (quotation marks omitted).

"Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the

law." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (quotation marks omitted). Under the FAA, there is a "heavy presumption in favor of confirming arbitration awards." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002). Thus, "federal courts should defer to an arbitrator's decision whenever possible." *Frazier*, 604 F.3d at 1321 (quotation marks omitted).

Vacatur of an arbitration award is allowed "only in very unusual circumstances," which are described in the FAA. *Gherardi v. Citigroup Global Markets Inc.*, 975 F.3d 1232, 1236 (11th Cir. 2020). Specifically, the FAA provides for vacatur of an arbitration award in four circumstances, two of which are relevant here:

> (3) where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; . . . or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). A party seeking vacatur bears the burden to establish the existence of one of the four grounds, *Riccard*, 307 F.3d at 1289; *see Frazier*, 604 F.3d at 1323–24 (rejecting "extra-statutory grounds for vacatur").

### A.

Smith claims that the arbitrator was "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy" under § 10(a)(3).  We disagree.

First, the arbitrator did not fail to consider that Smith "timely file[d] her arbitration demand with JAMS" and then "promptly mailed out [the demand] to IBM *on the following day*." Rather, the arbitrator found these facts simply did not amount to timely filing, since the arbitration agreement required her to submit the written demand *to IBM*, not to JAMS, by the filing deadline. While Smith disagrees with the arbitrator's view of the timing provision, the arbitrator did not refuse to consider her evidence on this point.

Second, the arbitrator considered and rejected Smith's arguments based on pandemic-related obstacles.  Smith had argued that the one-day delay in mailing was due to counsel working remotely during the COVID-19 pandemic and other pandemic-related difficulties.  The arbitrator was not persuaded, noting that Smith "managed to timely file a demand with JAMS," which showed that "pandemic restrictions were not the problem."  Smith responds that the electronic JAMS filing cannot be compared to the physical mailing of her IBM demand, given the "logistical hurdles" particular to mailing.  But, despite those hurdles, which would have been well-known in November 2020, Smith did not identify how she was prevented from mailing the demand to IBM one day earlier, on the same day she filed with JAMS.

22-11928                Opinion of the Court                9

Finally, Smith fails to show the relevance of evidence that the timing provision's mailing requirement stands in "stark contrast" with the "prevailing standard for conducting business electronically." As the arbitrator explained, he was bound by the contract, which specified the terms under which Smith's arbitration demand would be considered timely, even if it was different from standard business practices. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010) ("[T]he task of an arbitrator is to interpret and enforce a contract, not to make public policy.").

## B.

Next, Smith argues that the arbitrator exceeded his authority under § 10(a)(4) by refusing to entertain equitable tolling. In Smith's view, the arbitration agreement expressly provided for equitable tolling by (1) incorporating the ADEA limitations period and (2) permitting the arbitrator "to award any party the *full remedies* that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction."

Under § 10(a)(4), "an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quotations marks omitted). "Arbitrators do not exceed their powers when they make errors, even a serious error." *Gherardi*, 975 F.3d at 1237 (quotation marks omitted). The test is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

Nevertheless, an arbitrator may not disregard or modify "clear and unambiguous contract terms." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016); *see Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). So, "[t]he arbitrator acts within her authority when she even arguably interprets a contract, and she exceeds her authority when she modifies the contract's clear and unambiguous terms." *Wiregrass*, 837 F.3d at 1087.

Here, Smith has not shown that the arbitrator "exceeded [his] powers" within the meaning of § 10(a)(4). Nothing in the record reflects that the arbitrator "flagrantly defied the terms of the parties' contract." *Gherardi*, 975 F.3d at 1239.

For starters, we disagree with Smith's premise, since the arbitrator's decision reasonably can be construed to reject Smith's request for equitable tolling on the merits. Equitable tolling of a limitations period is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Dotson v. United States*, 30 F.4th 1259, 1268 (11th Cir. 2022); *see Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (*en banc*) (applying the "general test" for equitable tolling in the ADEA context). It does not extend to "garden variety claim[s] of excusable neglect." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

As we explained above, the arbitrator considered Smith's evidence on this point and found that "pandemic restrictions were not the problem." In other words, the arbitrator found that Smith

was not prevented from filing on time by circumstances outside her control. *See Dotson*, 30 F.4th at 1268.

Not only that, but in denying Smith's motion for reconsideration, the arbitrator went further and adopted the reasoning of IBM's response in opposition, which directly argued that equitable tolling did not apply in Smith's circumstances. And based on the record, the arbitrator easily could have found that Smith offered a garden-variety claim of excusable neglect, which was insufficient to excuse her untimely mailing. *See Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (holding that equitable tolling did not apply where "the problem was one that . . . counsel could have avoided by mailing the motion earlier"). That decision was well within the arbitrator's authority under the arbitration agreement, which made clear that demands filed later than the deadline were "deemed waived."

To the extent the arbitrator refused to consider equitable tolling at all, that decision was based on an arguable construction of the arbitration agreement. *See Gherardi*, 975 F.3d at 1239. Smith says that, by incorporating the ADEA statute of limitations and preserving her "full remedies" under that act, the timing provision expressly provides for equitable tolling. The term "remedies," however, generally refers to the means of preventing or redressing a wrong, such as injunctive relief or monetary damages. *See, e.g.*, *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 49 (1979) (noting the "usual judicial remedies of injunction and award of damages" (cleaned up)). It does not obviously sweep in a doctrine

that permits modification of the deadline for filing, particularly when the agreement otherwise states strongly that missing the demand deadline would result in "waive[r]" of the underlying claim, without exception. Cf. *Berklee College of Music. v. Mass. Fed'n of Teachers Local 4412*, 858 F.2d 31, 33 (1st Cir. 1988) (upholding an arbitrator's arguable interpretation of an agreement to permit late filing as a *de minimis* violation where the language did not specify that "missing a deadline would bar further consideration").

Because it was "open to interpretation" whether equitable tolling was permitted under the arbitration agreement, *Gherardi*, 975 F.3d at 1239, the arbitrator did not modify or disregard "clear and unambiguous terms," *Wiregrass*, 837 F.3d at 1087. Even if the arbitrator was wrong, his decision still "must stand" because he arguably construed and applied the arbitration agreement. *See Sutter*, 569 U.S. at 569; *Gherardi*, 975 F.3d at 1237.

## C.

Smith asserts that the arbitrator exceeded his authority by failing to meaningfully review her motion for reconsideration, which was expressly permitted by the arbitration agreement. Although the arbitrator initially ignored clear language in the agreement permitting the motion, he ultimately corrected the error and denied the motion on the merits. That latter merits decision was within the arbitrator's authority under the agreement, even if it was conclusory, so there is no basis to vacate the decision under § 10(a)(4). *See Cat Charter*, 646 F.3d at 844 ("[H]ad the parties

wished for a greater explanation, they could have requested that the [arbitrator] provide findings of fact and conclusions of law.").

### D.

Finally, Smith asserts that the arbitrator erred in rejecting her reliance on the ADEA's "piggybacking" rule. Ordinarily, an ADEA plaintiff must exhaust administrative remedies before filing suit in court by filing a charge of discrimination with the EEOC. *See* 29 U.S.C. § 626(d)(1). A judge-made exception to this rule provides that a "plaintiff who has not filed [her] own EEOC charge may 'piggyback' [her] claim onto the claim of a plaintiff who has filed a timely charge" concerning similar discriminatory treatment in the same time frame. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1101–02 (11th Cir. 1996). This exception is "grounded in the purpose of the EEOC charge requirement that the settlement of grievances be first attempted through the office of the EEOC." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993) (quotation marks omitted).

In this case, the arbitrator concluded that piggybacking had no clear application to and was inconsistent with the arbitration agreement. Smith responds that the ADEA's limitations period for filing suit—including the piggybacking doctrine—is a "substantive right" protected by the ADEA that cannot be waived by contract. She says her claim would have been timely under the piggybacking doctrine based on timely EEOC charges by other IBM employees,

so enforcing the timing provision would "abridge [her] rights altogether to pursue her claim under the ADEA."

In this regard, though, it appears Smith's argument is not that the arbitrator "exceeded [his] powers" under § 10(a)(4) by misinterpreting the agreement to exclude piggybacking. If it were, that argument would fail for the same basic reasons as her argument about equitable tolling, because the arbitrator arguably construed the arbitration agreement to exclude those doctrines. Instead, Smith appears to seek a declaratory judgment that the timing provision is unenforceable under the "effective-vindication" exception to the FAA.

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). It follows that federal courts will not uphold arbitration agreements that "waive . . . federally protected civil rights," *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009), or "that prevent the effective vindication of a federal statutory right," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). The Supreme Court has described the effective-vindication rule as a "judge-made exception to the FAA." *See id.*

Nevertheless, the Supreme Court has been "quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited

22-11928                Opinion of the Court                15

by federal law." *14 Penn Plaza*, 556 U.S. at 266 (quotation marks omitted).  The Court has never applied the effective-vindication rule to deny enforcement of an arbitration agreement. *See Italian Colors*, 570 U.S. at 235.  And it has indicated that the rule, if it remains viable, is limited to preventing the "prospective waiver of a party's *right to pursue* statutory remedies." *Id.* at 236 (quotation marks omitted; emphasis in original).  That would cover agreements "forbidding the assertion of certain federal statutory rights" or, perhaps, imposing fees for arbitration "so high as to make access to the forum impracticable." *Id.*  But it does not cover things like waivers of class-action procedures, even where the statute, like the ADEA, "expressly permit[s] collective action" in court. *Id.* at 237.

Here, Smith has not shown that the arbitration agreement prevented her from effectively vindicating her substantive rights afforded by the ADEA.  Piggybacking is not a substantive right protected by the ADEA.[3] *See Italian Colors*, 570 U.S. at 235.  Rather, the civil right protected by the ADEA is the right to "to be free from workplace age discrimination." *14 Penn Plaza*, 556 U.S. at 266.  The piggybacking rule is an exception to the requirement to file an EEOC charge before suing in court. *See Calloway*, 986 F.2d at 450.  The doctrine has no clear application in the arbitration context, where "[p]arties are generally free to structure their arbitration

---

[3] For that reason, any waiver of piggybacking did not trigger the protections of 29 U.S.C. § 626(f). *See 14 Penn Plaza*, 556 U.S. at 259, 265–66 (stating that § 626(f) applies only to "substantive right[s]" under the ADEA)

agreements as they see fit" and to agree on "rules under which any arbitration will proceed." *Stolt-Neilsen*, 559 U.S. at 683 (quotation marks omitted). Smith, for example, was not required to exhaust administratively under the arbitration agreement, so this case does not implicate the "purpose of the EEOC charge requirement." *Calloway*, 986 F.2d at 450. Instead, she agreed to submit a written demand to IBM no later than the deadline for filing a charge of discrimination, or her claim would be "deemed waived."

Smith makes no claim that the 180-day deadline itself made "access to the forum impracticable." *Italian Colors*, 570 U.S. at 236. And the fact that the agreement waived piggybacking did not affect Smith's "right to pursue" statutory remedies for her claim by mailing a written demand to IBM within that deadline. *Id.*

Smith responds that piggybacking is necessary to protect employees who "may not realize they have a discrimination claim at the time of their termination." But that's not "the reason behind the piggybacking rule," as she asserts. Rather, piggybacking is primarily about administrative futility. *See, e.g.*, *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057 (2d Cir. 1990) ("it serves no administrative purpose to require the filing of repetitive ADEA charges"). The scenario Smith describes is instead covered by equitable tolling, which may operate to "suspend[] a limitations period until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Cocke*, 817 F.2d at 1561. But Smith has not made any tolling argument along these lines.

Smith also relies heavily on the Sixth Circuit's decision in *Thompson v. Fresh Products, LLC*, 985 F.3d 509, 521 (6th Cir. 2021), which held that the "limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights." *But see Browning v. AT&T Paradyne*, 120 F.3d 222, 225 (11th Cir. 1997) (holding that the "ADEA limitations period is a procedural rather than substantive requirement" for purposes of retroactivity). But *Thompson*'s reasoning extends only to "provisions [that] are part of the substantive law of the cause of action created by the ADEA." *Thompson*, 985 F.3d at 521. Because piggybacking is a judge-made exception to the ADEA's exhaustion requirement, not created by the ADEA itself, *Thompson* does not support Smith's claim that piggybacking is nonwaivable.

Arguably, *Thompson*'s reasoning could extend to equitable tolling, since "the remedial purposes of civil rights legislation would be defeated if aggrieved plaintiffs were absolutely barred from pursuing judicial remedies by reason of excusable failure to meet the time requirement." *See Browning*, 120 F.3d at 227 (quotation marks omitted). To the extent equitable tolling was nonwaivable, though, the arbitrator had ample grounds to reject, and did reject, Smith's claim for equitable tolling based on pandemic-related hurdles, as we discussed above.

For these reasons, we affirm the district court's judgment confirming the arbitration decision in favor of IBM on Smith's ADEA claim.

**AFFIRMED.**