Cooke, J.
 

 delivered the following opinion of the court.
 

 The plaintiff in error was some time in the year 1813 indicted in the circuit court of Warren county upon a charge of horse stealing, alledged in the indictment to have been committed in the year 1801. Having been found guilty by the jury, the court, not conceiving the offence punishable under any of the statutes of this state,sentenced him, as at common law.
 

 Being dissatisfied with the decision of the circuit court, Roberts sued out a writ of error, and has thus brought the question before this court; and on his part it is alledged that he is not liable to any punishment whatever, because the law
 
 *424
 
 which was in force to punish the crime of horse stealing at the time he committed the offence, was repealed before the prosecution was commenced against him.
 

 On the part of the state it is argued, that he ought to be punished under the statute of 1799, which prescribes the punishment of death for such offences; and that this court, proceeding to pass such judgment as ought to have been given by the circuit court, will sentence him accordingly.
 

 The statute of 1799 prescribes death as the punishment to be inflicted on those guilty of horse-stealing, and repeals by an express clause, all punishments before in use.
 

 This offence as charged in the indictment, was committed in the year 1801.
 

 The legislature in the year 1807 undertook to provide anew for the punishment of horse-stealing, by the following section—
 

 Be it enacted,that every person who shall feloneously steal, take, and carry away, any horse, mare or gelding, the property of another person, the person so offending, shall receive on his or her bare back, a number of lashes not exceeding thirty nine, be imprisoned at the
 
 discretion
 
 of the court, no less than six months, and not more than two years, shall sit in the pilory two hours on three different days, and shall be rendered infamous, as by law persons guilty of petit larceny are infamous, and shall be branded with the letters H. T. in such manner and on such part of the person as the court shall direct. See acts of 1807 chap. 73 sect. 4.
 

 The statute of 1807 contains no express repealing clause, nor does it provide for the prosecution of those guilty under the statute of 1799.
 

 The court is clearly of opinion that this man must be wholly acquitted, or suffer death.
 

 By no possible construction, can he be punished at common law. The common law punishment was repealed by the statute of 1799, and of course, cannot operate upon the case for two reasons. 1st. It was not revived by the act of 1807, supposing that to be a repeal of the act of 1795; because at the same moment, a new punishment was created, which necessarily prevented the idea of the revival
 
 of
 
 the common law punishment: 2d. If the common law punishment had been revived by a repeal of the statute of 1799, yet it could only operate
 
 in future,
 
 and not upon cases which had happened previous to the revival, and this offence is charged to have been committed before the statute passed, which is contenued to be a repeat of the act of 1799.
 

 
 *425
 
 The principal question which presents itself is, whether the act of 1799 was repealed by the act of 1807.
 

 To effect a repeal, it is not necessary that the latter statute should have an express repealing clause, if it be a legislation upon the same subject, and contain different or inconsistent provisions, it operates as a repeal. And as it regards the case now
 
 before the court,
 
 the doctrine seems to be well settled in many cases to be found in the books.
 

 It
 
 is
 
 a
 
 doctrine, to the correctness of which we know of no exception in any of the reported cases, that in all cases where a statute creates a different punishment, the former mode is thereby repealed; and the rule operates, whether the punishment thus altered, is diminished or increased, 6 Bac. (Abr. Am.
 
 ed
 
 .) 372, 1 Leach 306. 4 Burr. 2086.
 

 It follows therefore, that, although there is no repealing clause, the statute of 1799 must be considered as repealed by that of 1807.
 

 The repeal of a penal statute, operates as a pardon of all offenses committed before that time, and supersedes the jurisdiction of the criminal courts, except where the repealing statute contains a provision expressly saving the right to prosecute. Very generally, when the legislature, undertake to repeal one punishment and substitute another, the right to prosecute and punish previous offences is reserved by a section expressly incorporated for that purpose; but if this is omitted, no instance, it is believed can be shown where the courts of criminal jurisdiction have taken cognizance of such offences.
 

 There being no saving clause in the act of 1807, and this prosecution not having been commenced until after the repeal of the law which was in force at the time it was committed, renders it very clear to the court that the prisoner must be discharged. 6 Bac. Abr. (Am
 
 Ed.)
 
 373. 3 Dall. 378. 4 Dall. 372.
 

 The only suggestion against this result is an argument
 
 ab inconvenienti.
 
 It is said that all persons guilty of horse-stealing between the years 1799 and 1807, who have not yet been punished, must escape with impunity. The court is not responsible for the acts of the legislature; we sit here to declare the law, and not to make it. If the impunity of crimes results from the omissions of the legislature to pass laws sufficiently cautious, it is a misfortune which the mere expounders of the law cannot obviate by judicial interpolations.
 

 But we are far from believing that this result is one which
 
 *426
 
 ought to be deprecated, or which was not anticipated by the legislature. The humane spirit which produced the statute of 1807, repealing the punishment of death, is one which ought to be encouraged as far as is consistent with the good order and harmony of society. The act of the legislature passed in that year, is a strong and solemn declaration of the opinion, that the punishment theretofore imposed upon the crime of horse stealing, was cruel, bloody, and disproportioned to the offence. It would seem singularly strange indeed that the mere violation of a personal chattel, should be subject to the same punishment with the perpetration of the foulest murder.
 

 To obviate this evident inequality of punishment, the statute of 1807 was no doubt enacted; and it is not unreasonable to believe that the framers of that law purposely omitted a saving clause, upon the ground that as the sanguinary punishment of death had that moment been repealed, as to a particular offence, it ought not to be exhibited afterwards, even for previously committed crimes. The crime is not changed in its nature by the punishment that is affixed to it; wherefore it is of the utmost consequence that this same kind of offence, should, particularly, if punished at the same time, be punished in the same way. It would exhibit a strange spectacle to see one man put to death for stealing a horse, on the same day that another was only whipped, branded, and imprisoned, for a like offence.
 

 A
 
 stranger who should see such exhibitions would never imagine these different punishments were imposed for the same crime; and when he should be informed how the fact was, it would be natural for him to wonder at the singular infatuation which had punished so strangely.
 

 But we forbear to pursue this subject any further; it is sufficient for our purpose that under the law, as it was left by the legislature of 1807, no matter with what intention, the prisoner cannot be punished.
 

 The judgment of the circuit court must therefore be reversed.