IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 5, 2022 Session

## STATE OF TENNESSEE v. MARVIN MAURICE DEBERRY

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Madison County
No. 19-177    Roy B. Morgan, Jr., Judge**

———————————————————

**No. W2019-01666-SC-R11-CD**

———————————————————

Timing is everything. In this case, at least, that adage holds true. Marvin Maurice Deberry committed a criminal offense and was convicted. But the legislature repealed the statute creating that criminal offense before he was sentenced. Years ago, the legislature enacted a default rule to govern this situation and similar ones. That rule, known as the criminal savings statute, provides generally that an offense must be prosecuted under the law in effect at the time the offense is committed, even if the law is later repealed or amended. *See* Tenn. Code Ann. § 39-11-112 (2018). If the later-enacted law "provides for a lesser penalty," however, the savings statute dictates that "any punishment imposed shall be in accordance with the subsequent act." *Id.* At first, the trial court sentenced Deberry under the law in effect at the time of his offense. But Deberry eventually convinced the trial court that the "lesser penalty" exception applied, and the trial court entered an amended judgment retaining Deberry's conviction but imposing no punishment. The Court of Criminal Appeals affirmed. We now reverse and reinstate Deberry's original sentence. We hold that a statute that repeals a criminal offense does not "provide for a lesser penalty" within the meaning of the criminal savings statute. Rather, a person who commits an offense that is later repealed should be convicted *and sentenced* under the law in effect when the offense was committed unless the legislature provides otherwise.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Amended Judgment of the Circuit Court Vacated and Original Judgment Reinstated**

SARAH K. CAMPBELL, J., delivered the opinion of the court, in which ROGER A. PAGE, C.J., and SHARON G. LEE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Ronald L. Coleman, Assistant Attorney General; Jody Pickens, District Attorney General; and April Knight and Eric Wood, Assistant District Attorneys General, for the appellant, State of Tennessee.

Brennan M. Wingerter, Assistant Public Defender – Appellate Director, and Jessica F. Butler, Assistant Public Defender, Tennessee Public Defenders Conference; George Morton Googe, District Public Defender; and Jeremy B. Epperson, Assistant Public Defender, for the appellee, Marvin Maurice Deberry.

**OPINION**

I.

Understanding the legal question presented in this appeal requires familiarity with three statutes. The first is the now-repealed Motor Vehicle Habitual Offenders Act—or MVHO Act—which made it a class E felony to operate a vehicle after being declared a motor vehicle habitual offender. Tenn. Code Ann. § 55-10-616 (2017) (repealed 2019). The second is what we call the MVHO Repeal Act, a 2019 law that repealed the MVHO Act and replaced it with a provision explaining how an MVHO can seek reinstatement of a driver's license that was revoked or restricted solely because of the person's MVHO status. Act of May 24, 2019, ch. 486, § 3, 2019 Tenn. Pub. Acts 1496 (codified at Tenn. Code Ann. § 55-10-601 (2020)). The third is the criminal savings statute. The first sentence of that statute provides generally that "[w]hen a penal statute or penal legislative act . . . is repealed or amended by a subsequent legislative act, the offense . . . shall be prosecuted under the act or statute in effect" when the offense was committed. Tenn. Code Ann. § 39-11-112. The second sentence provides an exception to that general rule: "[I]n the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act." *Id.*

With that statutory background introduced, we now turn to the factual and procedural history of this case. In 2018, law enforcement officers stopped Deberry for driving with a malfunctioning brake light. Deberry was indicted for multiple traffic-related offenses, including driving after being declared an MVHO, in violation of the MVHO Act, Tenn. Code Ann. § 55-10-616(a). On May 15, 2019, a Madison County jury convicted him on all counts and recommended a fine of $1,500 for the MVHO offense.

On May 2, 2019, about two weeks before Deberry was convicted, the Tennessee legislature passed the MVHO Repeal Act. Act of May 24, 2019, ch. 486, § 3, 2019 Tenn. Pub. Acts 1496.[1] The Governor signed that legislation into law on May 24, 2019, and it went into effect on July 1, 2019, about six weeks *after* Deberry was convicted. *Id.*

---

[1] The MVHO Repeal Act was part of broader legislation that "amend[ed] Tennessee Code Annotated, Title 39; Title 40 and Title 50, relative to criminal law." Act of May 24, 2019, ch. 486, 2019 Tenn. Pub. Acts 1496.

- 2 -

The MVHO Repeal Act accomplished two things. First, it repealed the MVHO Act, including the offense of driving after being declared an MVHO. *Id.* (stating that the MVHO Act "is amended by deleting the part and substituting instead the following"); *see* 1A Sutherland Statutory Construction § 23:12 (7th ed.) (Nov. 2021 Update) ("When an amendatory act purports to set out the original act or section as amended . . . all matter omitted from the act or section the amendment purports to amend, is repealed." (footnotes omitted)). Second, it created a process by which an individual whose driver's license was "revoked or restricted due solely to the person's status as [an MVHO] prior to July 1, 2019" may seek reinstatement of that license. Tenn. Code Ann. § 55-10-601. Specifically, an individual

> may petition the court that originally made such a finding to reinstate the person's driver license. Upon receiving a petition for a reinstated driver license, the court shall determine whether the person's driver license was subject to revocation or restriction under prior law due solely to the person's status as a motor vehicle habitual offender and, if so, order the reinstatement of the person's driver license. The person may provide a copy of the court's order to the department of safety, which shall then reissue the person's driver license without restriction.

*Id.*

Deberry was sentenced on July 8, 2019, one week after the MVHO Repeal Act went into effect. At his sentencing hearing, Deberry noted that the legislature had "recently repealed" the MVHO Act and argued that his punishment should be in accordance with the MVHO Repeal Act because it "essentially gets rid of the penalty" and thus constitutes a "lesser penalty" within the meaning of the criminal savings statute. The trial court disagreed and sentenced Deberry under the MVHO Act to a five-year sentence of split confinement for the MVHO conviction, along with the recommended fine.

Deberry then filed a "Motion for New Trial, Verdict of Acquittal, or Modification of Sentence," in which he repeated his argument that the MVHO Repeal Act "does not . . . provide for any penalty for any criminal conduct." At the motion hearing, Deberry reiterated that his five-year sentence "should be set aside" because the legislature "repealed" the MVHO Act and "no penalty is a lesser penalty." He clarified that he was "not arguing that the conviction should be set aside but just the sentence." The trial court agreed that "no penalty is a lesser penalty," granted Deberry's motion for a reduction of sentence, and entered an amended judgment as to count one reflecting Deberry's MVHO conviction but imposing no sentence.

The State appealed, and the Court of Criminal Appeals affirmed. *State v. Deberry*, No. W2019-01666-CCA-R3-CD, 2021 WL 1561688, at *9 (Tenn. Crim. App. Apr. 21,

2021), *perm. app. granted*, (Tenn. Sept. 23, 2021). After concluding that "the parties provide[d] two reasonable statutory interpretations," the court turned to the legislative history of the MVHO Repeal Act to decide whether the legislature "intended to impose a lesser penalty." *Id.* at *8. Based on the statements of two lawmakers, the court determined that the "legislative history overwhelmingly demonstrates the desire of the Legislature to provide relief to those who would otherwise be subject to greater penalties under the MVHO [Act]." *Id.*

We granted the State's application for permission to appeal to determine whether a statute that repeals a criminal offense "provides for a lesser penalty" within the meaning of the criminal savings statute.

II.

A.

When a trial court reduces a defendant's sentence under Tennessee Rule of Criminal Procedure 35, we review that decision for abuse of discretion. *State v. Tolle*, 591 S.W.3d 539, 545 (Tenn. 2019). But to the extent the trial court's decision turns on the interpretation and application of the criminal savings statute, our review is de novo with no presumption of correctness. *See id.* at 543–46; *see also Keen v. State*, 398 S.W.3d 594, 599 (Tenn. 2012) ("The construction of a statute and its application to the facts of a particular case present questions of law which we review de novo."). Moreover, a trial court necessarily abuses its discretion when it commits an error of law. *Koon v. United States*, 518 U.S. 81, 100 (1996).

This Court's role in statutory interpretation is "to determine what a statute means." *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 175 (Tenn. 2008). Specifically, we must decide "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012). Original public meaning is discerned through consideration of the statutory text in light of "well-established canons of statutory construction." *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2442 (2019) (Gorsuch, J., concurring in the judgment) (noting that judges have employed "traditional tools of interpretation . . . for centuries to elucidate the law's original public meaning").

We give the words of a statute their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). In the absence of statutory definitions, we look to authoritative dictionaries

published around the time of a statute's enactment. *State v. Edmonson*, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007).

We consider the whole text of a statute and interpret each word "so that no part will be inoperative, superfluous, void or insignificant." *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 228 (Tenn. 2010) (quoting *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)). We also consider "[t]he overall statutory framework." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 846 (Tenn. 2019). "[S]tatutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together . . . ." *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994).

We presume that a statute applies prospectively unless the legislature clearly provides for its retroactive application. *State v. Thompson*, 151 S.W.3d 434, 442 (Tenn. 2004); *Hannum v. Bank of Tenn.*, 41 Tenn. (1 Cold.) 398, 402 (1860) ("The very essence of a new law . . . is a rule for future cases.").

When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we "enforce the statute as written." *Johnson*, 432 S.W.3d at 848. But when a penal statute remains "grievous[ly] ambigu[ous] or uncertain[]," *Huddleston v. United States*, 415 U.S. 814, 831 (1974), the rule of lenity operates as a "tie-breaker" and requires us to resolve the ambiguity in the defendant's favor, *State v. Welch*, 595 S.W.3d 615, 623 n.4 (Tenn. 2020) (quoting *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010)).

B.

The criminal savings statute is a legislative abrogation of the common-law doctrine of abatement. We therefore begin by reviewing this common-law doctrine and later legislative developments.

At common law, the repeal—or even the amendment—of a criminal offense abated all prosecutions for that offense that had not yet reached a final disposition. *Bradley v. United States*, 410 U.S. 605, 607 (1973); *Richardson v. State*, 43 Tenn. (1 Cold.) 122, 123 (1866); *Roberts v. State*, 2 Tenn. (1 Overt.) 423, 425 (1815). This rule applied even when a statutory amendment merely reduced the penalty for a criminal offense. *Bradley*, 410 U.S. at 608; *Roberts*, 2 Tenn. (1 Overt.) at 425. A legislature could prevent abatement by including a savings clause in the repealing or amending statute. But if it did not, the defendant would get off scot-free, even if his conduct was illegal at the time it occurred. *Bradley*, 410 U.S. at 607–08; *Roberts*, 2 Tenn. (1 Overt.) at 425.

In 1858, our legislature enacted a general savings statute applicable to both civil and criminal proceedings, which has remained on the books ever since. Tenn. Code Ann. § 1-

3-101 (2014) (prior versions at Code of Tennessee § 49 (1858); Shannon's Code § 61 (1917); Tennessee Code § 12 (1932); Tenn. Code Ann. § 1-301 (1956)). It states that "[t]he repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed." *Id.* Shortly after its enactment, we held that this statute clearly abrogated the common-law doctrine of abatement. *Richardson*, 43 Tenn. (1 Cold.) at 124. The statute permits prosecutions for a repealed or amended criminal offense under the law in effect when the offense was committed. *Id.*

In 1968, the legislature enacted the criminal savings statute. Act of April 4, 1968, ch. 513, § 1, 1968 Tenn. Pub. Acts 236–37. As amended, that statute provides that

> [w]hen a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117,[2] in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

Tenn. Code Ann. § 39-11-112.

The first sentence of the criminal savings statute imports the principles of the general savings statute into Title 39. *See State v. Hutchison*, 898 S.W.2d 161, 176–77, 177 & n.2 (Tenn. 1994) (order on petition to rehear) (noting that the criminal savings statute "has been part of our statutory law in one form or another since [1858]"). The second sentence creates an exception for ameliorative legislation that "provides for a lesser penalty." Tenn. Code Ann. § 39-11-112.[3]

---

[2] Tennessee Code Annotated section 40-35-117 (2019), which governs the applicability of the Tennessee Criminal Sentencing Reform Act of 1989, is not implicated in this case.

[3] Although the general savings statute does not contain this lesser-penalty exception, a similar exception appears in every major revision of the Tennessee Code. *See* Code of Tennessee § 45 (1858) ("No offence committed, and no penalty or forfeiture incurred under any act hereby repealed, and before the repeal takes effect, shall be affected by the repeal; except that when a punishment, penalty, or forfeiture is mitigated by the provisions herein contained, such provisions may be applied to the judgment pronounced after the repeal."); Shannon's Code § 59a3 (1917) (same); Tennessee Code § 8 (1932) (same); Tenn. Code Ann. § 1-208 (1956) (similar). Unlike the criminal savings statute, however, these provisions applied only to criminal offenses repealed and reenacted by the revised code. Code of Tennessee § 45 (1858); Shannon's Code § 59a3 (1917); Tennessee Code § 8 (1932); Tenn. Code Ann. § 1-208 (1956).

C.

This case requires us to interpret the phrase "provides for a lesser penalty" in the criminal savings statute. More precisely, we must determine whether the MVHO Repeal Act "provides for a lesser penalty" as a reasonable reader would have understood that phrase at the time the criminal savings statute was enacted. After applying traditional tools of statutory interpretation, we conclude that the phrase "provides for a lesser penalty" does not encompass a statute like the MVHO Repeal Act that eliminates an offense altogether rather than reducing the punishment for that offense.

1.

We start by examining the phrase "provides for a lesser penalty" in the criminal savings statute. Tenn. Code Ann. § 39-11-112. Because those words are not statutorily defined, we give them their "natural and ordinary meaning." *Ellithorpe*, 479 S.W.3d at 827 (quoting *Johnson*, 432 S.W.3d at 848).

When "provide" is used as an intransitive verb, as it is here, it means "[t]o make a stipulation or condition." *Provide*, American Heritage Dictionary of the English Language 1053 (1969); *see also Provide*, Webster's Third New International Dictionary 1827 (1971) ("to make a proviso or stipulation"); *Provide*, 12 The Oxford English Dictionary 713 (2d ed. 1989) ("To make it, or lay it down as, a provision or arrangement; to stipulate *that*"). For example, "[t]he Constitution provides for a bicameral legislature." *Provide*, American Heritage Dictionary of the English Language 1053 (1969).

The adjective "lesser" means "[s]maller or less in size, amount, value, or importance, especially in a comparison between two things." *Lesser*, American Heritage Dictionary of the English Language 750 (1969); *see also Lesser*, 8 The Oxford English Dictionary 842 (2d ed. 1989) ("less"). The adjective "less," a "comparative of little," means "[n]ot as great in magnitude or degree." *Less*, American Heritage Dictionary of the English Language 750 (1969); *see also Less*, 8 The Oxford English Dictionary 840 (2d ed. 1989) ("Of not so great size, extent, or degree (as something mentioned or implied)").

A "penalty" is a punishment, not limited to incarceration, that is imposed as a consequence for violating the law. *Penalty*, Ballentine's Law Dictionary 929 (3d ed. 1969) ("In the broad sense of the term, the consequences visited by law upon the heads of those who violate the law, particularly provisions of the criminal law and police regulations."); *Penalty*, Black's Law Dictionary 1290 (4th rev. ed. 1968) ("a punishment imposed by statute as a consequence of the commission of an offense"); *Kokesh v. SEC*, 137 S. Ct. 1635, 1642 (2017) ("A 'penalty' is a 'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws.'" (alteration in original) (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892))).

These definitions suggest that a subsequent act "provides for a lesser penalty" when it stipulates a punishment that is smaller in magnitude or degree than the penalty originally imposed for the commission of the same criminal offense. So interpreted, the phrase "provides for a lesser penalty" does not encompass a law that repeals a criminal offense. A law that repeals a criminal offense does not stipulate *any* punishment, let alone a reduced punishment. It instead eliminates the criminal offense altogether. And the adjective "lesser" presupposes the existence of the noun it modifies. Like the term "less," it signifies a difference "in magnitude or degree"—not the complete elimination of the thing being compared. *Less*, American Heritage Dictionary of the English Language 750 (1969). To illustrate the point, no one would understand a "lesser evil" to include a choice that is not evil at all.

Consideration of statutory context and the broader statutory framework reinforces our conclusion that a statute that repeals a criminal offense does not "provide for a lesser penalty." The first sentence of the criminal savings statute—like the general savings statute—unambiguously preserves the State's ability to prosecute crimes committed before the repeal of a criminal offense. Tenn. Code Ann. § 39-11-112 ("When a penal statute or penal legislative act of the state is *repealed* or amended by a subsequent legislative act, the offense . . . shall be prosecuted under the act or statute in effect at the time of the commission of the offense." (emphasis added)). The MVHO Repeal Act repealed the offense of driving after being declared an MVHO, so it fits squarely within the first sentence of the criminal savings statute.

The Court of Criminal Appeals' interpretation—that "lesser penalty" includes no penalty—renders the first sentence of the criminal savings statute largely meaningless as applied to "repealed" offenses, which "shall be prosecuted" under the law in effect when the offense was committed. *Id.* To "prosecute" someone for a criminal offense includes not only adjudicating guilt, but also imposing a punishment. *See Prosecute*, Black's Law Dictionary 1385 (4th rev. ed. 1968) ("To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion."); *Prosecute*, Ballentine's Law Dictionary 1013 (3d ed. 1969) ("To maintain rather than to commence or begin an action."); *Prosecute*, Webster's Third New International Dictionary 1820 (1971) ("to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal"); *Bradley*, 410 U.S. at 609 ("In the legal sense, a prosecution terminates only when sentence is imposed."). If the phrase "provides for a lesser penalty" encompasses a repeal, then the lesser-penalty exception would almost completely swallow the general rule. The State could "prosecute" someone only to the point of conviction but would be unable to impose any punishment. *But see* Tenn. R. Crim. P. 32(b) ("After a verdict or plea of guilty, the court *shall* set the sentence . . . ." (emphasis added)); Tenn. R. Crim. P. 32(e)(2)(C) ("A judgment of conviction *shall* include . . . the adjudication and sentence." (emphasis added)).

Punishment-free prosecutions of this sort are not only contrary to the ordinary meaning of the term "prosecute," but also inconsistent with the "overall statutory framework" of criminal sentencing. *Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 846. Consider the two statutory provisions that immediately follow the criminal savings statute. Section 39-11-113 instructs that "[e]very person who is convicted of a felony, the punishment for which is not otherwise prescribed by a statute of this state, shall be sentenced as for a Class E felony." Tenn. Code Ann. § 39-11-113 (2018). And section 39-11-114 provides that "[e]very person who is convicted of a misdemeanor, the punishment for which is not otherwise prescribed by a statute of this state, shall be sentenced as for a Class A misdemeanor." *Id.* § 39-11-114 (2018). These provisions reflect the legislature's policy determination that all crimes should have a corresponding punishment, which further reinforces our conclusion that the criminal savings statute does not contemplate punishment-free prosecutions.

We also find it persuasive that other courts have reached similar conclusions. For example, the Court of Criminal Appeals has twice held that the redefinition of a criminal offense (which, at common law, operated as a repeal) did not trigger the lesser-penalty provision of the criminal savings statute. *State v. Brimmer*, No. E2014-01393-CCA-R3-CD, 2014 WL 7201795, at *2–3 (Tenn. Crim. App. Dec. 18, 2014), *perm. app. denied*, (Tenn. Apr. 10, 2015); *State v. Sherman*, No. E2006-01226-CCA-R3-CD, 2007 WL 2011032, at *2–5 (Tenn. Crim. App. July 12, 2007), *aff'd*, 266 S.W.3d 395 (Tenn. 2008). In both cases, the prosecutions were saved by the first sentence of the criminal savings statute. *Brimmer*, 2014 WL 7201795, at *2–3; *Sherman*, 2007 WL 2011032, at *2–5.

At least eight other states have savings statutes with an exception for ameliorative amendments that reduce the penalty for a crime. 5 Ill. Comp. Stat. 70/4 (2020); Iowa Code § 4.13 (2022); Ky. Rev. Stat. Ann. § 446.110 (LexisNexis 2021); Ohio Rev. Code Ann. § 1.58 (West 2004); Tex. Gov't Code Ann. § 311.031 (West 2013); Vt. Stat. Ann. tit. 1, § 214 (2015); Va. Code Ann. § 1-239 (2017); W. Va. Code Ann. § 2-2-8 (2022). Several courts in these jurisdictions have refused to apply the ameliorative exception when a criminal offense was repealed or redefined. *See People v. Glisson*, 782 N.E.2d 251, 254–57 (Ill. 2002) (repealed); *State v. Easton*, 510 S.E.2d 465, 478–83 (W. Va. 1998) (redefined); *State v. Matthews*, 310 A.2d 17, 18–20 (Vt. 1973) (repealed); *Smith v. State*, 620 S.W.3d 445, 450–53 (Tex. Ct. App. 2020) (redefined); *see also Rodgers v. Commonwealth*, 285 S.W.3d 740, 752 (Ky. 2009) (holding that statutory amendments to the self-defense statute did not provide for a lesser penalty) (citing *Commonwealth v. Louisville & N.R. Co.*, 215 S.W. 938 (Ky. Ct. App. 1919)); *State v. Lee*, No. 20-1584, 2021 WL 5475460, at *2 n.4 (Iowa Ct. App. Nov. 23, 2021) ("We also question whether the elimination of a penalty by repeal of a statute is a 'reduction' of the penalty . . . ."). These authorities further buttress our conclusion that the repeal of a criminal offense does not fall within the ameliorative exception of the criminal savings statute.

The Court of Criminal Appeals cited our decisions in *State v. Menke*, 590 S.W.3d 455 (Tenn. 2019), and *State v. Pearson*, 858 S.W.2d 879 (Tenn. 1993), as support for its contrary holding. *Deberry*, 2021 WL 1561688, at *9. But those decisions are readily distinguishable. *Menke* involved a legislative amendment to the grading of theft offenses that "effectively changed the punishment for certain theft offenses" and "reduced the punishment for the defendant's crime." 590 S.W.3d at 468–69. We held that those amendments "clearly provide[d] for a 'lesser penalty' than the previous version of the theft grading statute" and therefore triggered the criminal savings statute's "lesser penalty" exception. *Id.* at 470. *Pearson* dealt with a narrow class of criminal offenders—those who committed crimes after July 1, 1982, and before November 1, 1989, when the Criminal Sentencing Reform Act of 1989 became effective. 858 S.W.3d at 880. We held that, for this narrow category of defendants, trial courts "must calculate the appropriate sentence under both the 1982 sentencing statute and the 1989 [sentencing statute], and then impose the lesser sentence of the two." *Id.* That result was required by the express language of the Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-117(b) (2019) ("[A]ny person sentenced on or after November 1, 1989, for an offense committed between July 1, 1982, and November 1, 1989, shall be sentenced under this chapter."), as well as the criminal savings statute itself, *id.* § 39-11-112 ("*Except as provided under § 40-35-117*, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act." (emphasis added)). Importantly, neither *Menke* nor *Pearson* involved the *repeal* of a criminal offense. We thus had no opportunity in those cases to consider how the criminal savings statute applies to a repealing statute.

This case, by contrast, squarely presents that question. And we now hold that a statute that repeals a criminal offense does not "provide[] for a lesser penalty" within the meaning of the criminal savings statute. *Id.*

2.

The Court of Criminal Appeals' contrary decision rested heavily on the legislative history of the MVHO Repeal Act. The court turned to that legislative history almost immediately, after summarily concluding that the "lesser penalty" language of the criminal savings statute was ambiguous because "the parties [had] provide[d] two reasonable statutory interpretations." *Deberry*, 2021 WL 1561688, at *8. The court offered no independent interpretation of the disputed statutory provisions, nor did it apply any canons of statutory construction or other traditional tools of statutory interpretation that might illuminate the meaning of the statutory text. *See id.*

Respectfully, the Court of Criminal Appeals' approach was flawed. A court should deem statutory language ambiguous only after employing all of the traditional tools of statutory construction, including consulting dictionary definitions, examining statutory

structure and context, and applying well-established canons of statutory construction. To be sure, "employing the traditional tools of statutory construction may require some effort." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc). But "that effort does not make a text ambiguous." *Id.* We reiterate, moreover, that when the plain meaning of a statute is clear after application of the traditional tools of statutory interpretation, a court should not "delve into the legislative history of an unambiguous statute." *Welch*, 595 S.W.3d at 624; *see also D. Canale & Co. v. Celauro*, 765 S.W.2d 736, 738 (Tenn. 1989) ("Where there is no ambiguity in the language of an act, comments of legislators, or even sponsors of the legislation, before its passage are not effective to change the clear meaning of the language of the act.").

Even if the legislature's primary objective in passing the MVHO Repeal Act was to eliminate penalties for the conduct of driving after being declared an MVHO, it does not necessarily follow that the legislature intended to eliminate penalties even for individuals like Deberry who violated the MVHO Act while it was still in effect. After all, "no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam). Applying new statutes—even ameliorative ones—to conduct that occurred before the statute's enactment implicates countervailing interests such as fairness and predictability. One of the reasons States departed from the common-law doctrine of abatement was that it led to disparate punishment for "similarly situated defendants . . . solely because the proceedings of one [case] had moved more quickly and had become final before the change in the law." *Glisson*, 782 N.E.2d at 254. And allowing offenders to escape punishment for conduct that was a crime at the time it occurred could undermine respect for the rule of law and weaken its deterrent effect. *See* Tenn. Code Ann. § 40-35-102(3) (2019) ("Punishment shall be imposed to prevent crime and promote respect for the law . . . .").

Deciding whether and to what extent these and other "competing values" should be "sacrificed to the achievement of a particular objective" is the job of the legislature. *Rodriguez*, 480 U.S. at 526. Tennessee's legislature already balanced those interests for criminal laws generally when it enacted the criminal savings statute. "[T]he whole point" of a savings statute "is to provide a stable set of background principles that will promote effective communication between [the legislature] and the courts." *Dorsey v. United States*, 567 U.S. 260, 297 (2012) (Scalia, J., dissenting). A court therefore must apply those background principles absent a "clear showing" that the legislature has deviated from them. *Id.*

Nothing in the MVHO Repeal Act indicates that the legislature intended to deviate from the general rules in the criminal savings statute. Accordingly, those default rules apply. The MVHO Repeal Act "repeal[ed]" the MVHO Act and did not "provide[] for a lesser penalty," so it was appropriate for the State to prosecute Deberry under the MVHO Act, which was in effect when he committed his offense. Tenn. Code Ann. § 39-11-112.

Had the legislature desired a different result, it could have specified that the MVHO Repeal Act abated pending prosecutions for offenses committed before the Act's effective date.

3.

Despite having pressed and prevailed on the argument that the phrase "lesser penalty" includes no penalty, Deberry has abandoned that position in this Court and now argues instead that the MVHO Repeal Act "provides for a lesser penalty" because it fails to eliminate administrative fees related to license reinstatement. According to Deberry, individuals convicted of driving after being declared an MVHO must pay a total of $153 in administrative fees to regain their driver's licenses. He posits that those administrative fees constitute "lesser penalt[ies]" within the meaning of the criminal savings statute. This argument fails for two reasons.

First, the MVHO Repeal Act does not "provide for" administrative fees related to license reinstatement. The Act is instead entirely silent on the matter. As defense counsel conceded at oral argument, those fees existed before the legislature enacted the MVHO Repeal Act. Therefore, we cannot say that the MVHO Repeal Act either explicitly or implicitly makes these fees a "stipulation or condition" of the license reinstatement process. *Provide*, American Heritage Dictionary of the English Language 1053 (1969); *see also Provide*, 12 The Oxford English Dictionary 713 (2d ed. 1989) ("To make it, or lay it down as, a provision or arrangement; to stipulate *that*."). Rather, those fees were "provided" by pre-existing statutes and regulations. *See* Tenn. Code Ann. § 55-12-114(c) (2020) ($100 restoration fee); *id.* § 55-12-129(a) (2020) ($50 financial responsibility fee); *id.* § 55-50-303(b)(3) (2020) ($3 filing fee); Tenn. Comp. R. & Regs. 1340-01-13-.21(1)(a) (requiring proof of "eligibility to reapply; compliance with Financial Responsibility Law (when applicable); and payment of all reinstatement fines").

Second, the administrative fees at issue are not "penalties." It is true that some penalties, such as fines, are pecuniary in nature. *Kokesh*, 137 S. Ct. at 1642; *City of Chattanooga v. Davis*, 54 S.W.3d 248, 259 (Tenn. 2001) (noting that a "fine" is "a payment to a sovereign as punishment for some offense" (quoting *Browning–Ferris Indus. of Vt. v. Kelco Disposal*, 492 U.S. 257, 265 (1989))). Indeed, the trial court initially imposed a $1,500 fine in this very case. But, unlike fines, administrative fees related to license reinstatement are not "punishment[s] imposed by statute as a consequence of the commission of an offense." *Penalty*, Black's Law Dictionary 1290 (4th rev. ed. 1968). These administrative fees are triggered only when an MVHO voluntarily applies for license reinstatement.

A statute is generally "considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose." *Trop v. Dulles*, 356 U.S. 86, 96 (1958). Here, a "legitimate governmental purpose" of charging fees in connection

- 12 -

with license reinstatement is to offset the administrative costs of enforcing motor vehicle laws. *See* Tenn. Code Ann. § 55-12-129(e) (2020) ("Fees paid to the department of safety pursuant to this title shall be expendable receipts to be used by the commissioner of safety toward the cost of administering this title."). We therefore hold that administrative fees related to license reinstatement are not "lesser penalties" for the offense of driving after being declared an MVHO. Tenn. Code Ann. § 39-11-112.

Deberry invokes the rule of lenity, but that rule is not implicated unless there is "a 'grievous ambiguity or uncertainty' in the statute." *Welch*, 595 S.W.3d at 623 n.4 (quoting *Huddleston*, 415 U.S. at 831). Deberry does not identify any language in the MVHO Repeal Act or criminal savings statute that is "grievous[ly] ambigu[ous] or uncertain[]." *Id.* Nor could he. As explained above, under the plain and ordinary meaning of the statutes at issue, the MVHO Repeal Act does not "provide[] for a lesser penalty," either by repealing the offense of driving as an MVHO or by failing to eliminate preexisting fees imposed during the license reinstatement process. Tenn. Code Ann. § 39-11-112.

*       *       *

We hold that a statute that repeals a criminal offense does not "provide[] for a lesser penalty" within the meaning of the criminal savings statute and that a person who commits an offense that is later repealed "shall be prosecuted"—i.e., convicted and sentenced— "under the act or statute in effect" when the offense was committed unless the legislature says otherwise. *Id.* We also hold that the MVHO Repeal Act does not "provide[] for a lesser penalty" by failing to eliminate preexisting administrative fees related to license reinstatement. *Id.* The trial court abused its discretion when it granted Deberry's Rule 35 motion based on an erroneous interpretation of the criminal savings statute. We therefore reverse the judgment of the Court of Criminal Appeals, vacate the trial court's amended judgment as to count one, and reinstate the trial court's original judgment imposing Deberry's split-confinement sentence and fine.[4] Because Deberry is indigent, the costs of this appeal are taxed to the State of Tennessee.

_____
SARAH K. CAMPBELL, JUSTICE

---

[4] In the alternative, Deberry asks this Court to reinstate his fine but not his five-year sentence of split-confinement. We decline that invitation. The criminal savings statute does not give us authority to pick and choose which parts of a repealed statute to enforce.

- 13 -